IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ALLAN SHONTA MAUL and<br>VERNON WHITESIDE, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-05-605-C |
| | ) | |
| LOGAN COUNTY BOARD OF<br>COUNTY COMMISSIONERS, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

The only remaining Defendants, Michael Bondurant, David Webb, and the City of

Langston (Langston), have moved for summary judgment.  Plaintiffs responded, and

Defendants filed a reply.  For the reasons set out below, Defendants' motion is granted.

STANDARD OF REVIEW

Summary judgment is proper only if the moving party shows "there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c).  The Court will consider "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any" in making that

determination.  Id.  The evidence submitted does not need to be in a form that would be

admissible at trial but the content or substance must be such that the evidence would be

admissible.  Argo v. Blue Cross & Blue Shield of Kansas, Inc., 452 F.3d 1193, 1199 (10th

Cir. 2006).

"An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Id. At the summary judgment stage, the Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611 (10th Cir. 1994). Thus, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Simms v. Oklahoma ex rel. Dep't of Mental Health, 165 F.3d 1321, 1326 (10th Cir. 1999); McWilliams v. Jefferson County, ___ F.3d. ___, 2006 WL 2556350, at *2 (10th Cir.) ("In determining whether any genuine issue as to any material fact exists, evidence is to be liberally construed in favor of the party opposing the motion for summary judgment.").

## BACKGROUND

Plaintiffs have objected to numerous pieces of evidence in their Response and filed a related motion in limine and motion to strike (Dkt. Nos. 57 & 58). Most of the objections are to statements in affidavits submitted by Defendants that Plaintiffs consider to be self-serving and conclusory and, therefore, inadequate evidence under Federal Rule of Civil Procedure 56(e). The Court does not agree. Many of these statements, such as Bondurant's that he did not coerce the alleged rape victim, assert a negative such that further elaboration is not possible. Furthermore, unless the affidavit is shown to raise a sham issue of fact,

statements based on personal knowledge which are also self-serving are acceptable summary judgment evidence. Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986). Presumably, Bondurant would testify at trial that he did not coerce her, and the jury would decide whether to credit or discredit such testimony. The Court will not at summary judgment engage in such credibility determinations. Thus, in large part, Plaintiffs' objections and motion to strike are without merit. Additional arguments will be addressed below, if the Court relies on a particular document to which complaints are raised in deciding Defendants' motion.[1]

The following recitation of facts is based on evidence properly before the Court at summary judgment, construed in the light most favorable to Plaintiffs. Plaintiffs assert claims against Defendants related to the arrest and prosecution of them for the first-degree rape of a sixteen-year-old girl (Minor). Minor attended a party at the home of Keysah Ellerby and Plaintiffs Allan Shonta Maul and Vernon Whiteside in the evening of December 27, 1999. On January 2, 2000, Minor reported to her mother that she had been raped, on separate occasions, by three men while at that party. Minor's mother contacted the Langston Police Department that same day.

Langston police officer Bondurant received that report and investigated the rape allegations. Bondurant had been a police officer with Langston since 1998 and had

---

[1] The Court, however, does not consider Plaintiffs' arguments with respect to Defendants' designations of certain witnesses as experts. (See Pls.' Mot. to Strike, Dkt. No. 62.) In deciding the present motion, all witnesses are treated as fact witnesses only.

completed not more than 324 hours of CLEET training.[2]  After receiving the report from

Minor's mother in the afternoon of January 2, Bondurant went to Minor's residence and

interviewed her about what occurred at the party.  Minor identified the men who raped her

as Plaintiffs Maul and Whiteside and John Thomas Leyva.  According to Bondurant, Minor

reported, among other things, that:

> Leyva gave her alcoholic beverages to drink;
>
> she felt "tipsy" and "sluggish" as a result;
>
> Leyva attempted to pull her into a back bedroom, causing her to fall, but Ellerby and Whiteside helped her up;
>
> Maul later took Minor to his room, took off her clothes, ignored her instruction to stop, laid down on her when she tried to get up, and penetrated her vagina with his penis;
>
> later, while Minor was laying on a couch in the living room, Leyva approached, fondled her breasts, pulled her up and into a bedroom, tried to kiss her, ignored her when she turned away and told him to stop, took off her clothes, penetrated her vagina with his penis, and did not stop sexual intercourse, despite her pushing him, until she said it hurt and that she would start screaming;
>
> later, after Minor had returned to the couch and fallen asleep, Whiteside approached, fondled her breasts, took her to a bedroom, began performing oral sex on her, penetrated her vagina with his penis, despite having asked to have sex with her and having been told "no," and although he left the room a couple of times during which Minor tried to put on her clothes, Whiteside returned and pushed her back onto the bed.

---

[2]  "'CLEET' is the acronym for Oklahoma's 'Council on Law Enforcement Education and Training,' which certifies the mandatory education for Oklahoma law enforcement officers." Graves v. Thomas, 450 F.3d 1215, 1219 n.1 (10th Cir. 2006)

(Defs.' Ex. A2, Bondurant Report.)   Minor also apparently told Bondurant during that interview that the day after the party, Whiteside had asked Minor on the phone if she had told Ellerby that Leyva had raped her and told her to keep "our secret."  (Id.)  Ellerby is Maul's sister and, at the time, was Whiteside's fiancee.

According to his Report, after speaking to Minor, Bondurant arrived at the house where the party was held.  He spoke, alone, to these individuals in sequence, and reportedly was told the following:

> Ellerby:  denied having any knowledge about Minor having been raped but stated that she knew that Minor and Leyva had had sex and that she and Whiteside had discussed that fact.
>
> Whiteside:  denied having sex with Minor, stated that he had not had any sexual relations with Minor nor did he know of anyone who had.
>
> Maul:  denied having any knowledge of Minor having sex with either Whiteside or Leyva.  However, he admitted that he took Minor's clothes off, penetrated her vagina with his penis, despite her telling him to stop, and that he "quit" when his fiancee called on the phone.[3]

(Id.)

---

[3] Plaintiffs argue that Defendants should be precluded from offering any evidence that Maul admitted to having sex with Minor and that she had asked him to stop because the audio tape Bondurant claims he made of this confession has not been produced.  However, apart from the issue of whether the audio tape would be allowed into evidence (after not having been previously disclosed) or any reference to such a tape would be permitted, Bondurant may testify, based on his personal knowledge, as to what Maul said or did not say with respect to the alleged rape.  Plaintiffs do not assert a hearsay objection, nor does it appear that one would be sustained.  See Fed. R. Evid. 801(d)(2).  Therefore, Plaintiffs' objection and request that "any information regarding the alleged confession to the alleged rape of [Minor] by Maul" be barred from evidence (Pls.' Resp. at 19) is overruled.

Bondurant then went to another location to interview Leyva.  (Id.)  Leyva reportedly admitted that he had sex with Minor but stated that he stopped when she asked him to stop.  (Id.)  Leyva denied any knowledge of sexual activity between Minor and either Maul or Whiteside.  (Id.)

Minor, Minor's mother, and Minor's older sister provided written statements.  The mother and sister had no personal knowledge of the alleged rapes but commented on Minor's subsequent behavior and emotional state and stated, in conclusory fashion, that she had told them what had occurred.[4]

---

[4]  Each of these statements is the subject of a pending motion in limine and evidence to which Plaintiffs object.  With respect to the statements by Minor's mother and sister, the Court's consideration of those statements is limited to the description of the evidence described above.  Such limited consideration appears to satisfy Plaintiffs' concerns that neither claims to have witnessed the alleged rapes or even specifically states her belief that rapes occurred.

However, Plaintiffs also complain that Minor's statement should not be considered because it is illegible and not authenticated.  Federal Rule of Evidence 902(a) requires authentication as a prerequisite to the admission of evidence.  That condition precedent is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 902(a).  One way of authenticating evidence is through the testimony of a witness with knowledge that a matter is what it is claimed to be.  Id. (b) (1).

Here, this statement is supported by sworn affidavit.  (Bondurant Aff. ¶ 5.)  Federal Rule of Civil Procedure 56(e), however, requires more: "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."  In addition to identifying the source of the document, the affiant must state under oath that the document had not been altered.  Taylor v. Princeps, 141 Fed. Apex. 705, 708 (10th Cir. 2005) (unpublished and cited in accordance with Tenth Circuit Rule 36.3).  In complaining about the lack of authentication, Plaintiffs do not claim that this statement has been altered.  Such a position appears untenable given that the testimony adduced from Minor at the preliminary hearing, the allegations recorded in Bondurant's report, and the statement presented as Minor's are largely consistent.  Under the circumstances, the Court finds that Bondurant's affidavit and other evidence in the record are adequate to authenticate the statement.  Even so, the Court agrees that portions of the statement are illegible and, thus, cannot be considered as part of the record at summary judgment.  (Defendants

(continued...)

On January 4, 2000, Bondurant submitted two probable cause affidavits to the Assistant District Attorney responsible for this case, Vincent Antonioli, that recounted Minor's allegations of having been raped by Maul and Whiteside. Those affidavits did not refer to either Ellerby's or Leyva's statements to Bondurant. (Defs.' Ex. A, Bondurant Aff. Exs. 8 & 9.) Based on those affidavits, probable cause orders were judicially issued.

On February 2, Antonioli filed Informations against Maul and Whiteside charging them both with First Degree Rape. On February 3, arrest warrants were issued and Plaintiffs were arrested. A preliminary hearing was held on April 3 and 4 before the Honorable Judge Wheeler. Minor testified, and her testimony largely conformed to the allegations contained in Bondurant's Report. (See Defs.' Ex. I, Preliminary Hr'g Tr.) Plaintiffs were bound over for trial.

In January, February, and March 2000, Defendant Webb was Langston's Chief of Police. Webb claims that Bondurant was "a well-trained CLEET certified law enforcement officer" and that he knows of no misconduct during the criminal investigation of Plaintiffs. (Defs.' Ex. B, Webb Aff., ¶ 3.) Plaintiffs argue that those statements should be stricken based on Webb's deposition testimony that he believed that Bondurant's investigation and/or the criminal investigation file compiled by Bondurant were insufficient" but that Webb nevertheless believed it proper to forward it to the district attorney's office. (Pls.' Mot. to

---

[4] (...continued)
have attached a "better copy" of Minor's statement to their Reply, Defs.' Reply at 10 & Ex. 1; however, that copy too contains portions that cannot be read because of the poor copy quality of the document.)

Strike, Dkt. No. 58, at 5-7.)   These statements are not contradictory, but the deposition

testimony referred to is considered as well.

Plaintiffs also note that a petition was circulated in Langston complaining about

Bondurant.[5]   A letter attached to the petition is dated January 28, 2000, and states that the

author ("Meeks") "will circulate a petition with [the community's] concerns" for the benefit

of Chief Webb.   (Dkt. No. 67, Ex. 1 at 1.)   It appears that the petition was instigated by a

relative of Plaintiffs, a proprietor of a liquor store whom Bondurant had previously warned

not to sell alcohol to minors.   (Bondurant Aff. ¶¶ 21-22; Pls.' Resp. at 5-6).   According to

Bondurant, he believed Charlene Meeks initiated the petition but was unaware of who signed

the petition until he arrested her on February 10, 2000 for allegedly selling alcohol to minors.

(Bondurant Aff. ¶ 22.)

Following a mistrial in the first jury case on February 25, 2003, the rape cases against

Plaintiffs were tried a second time.   On May 30, 2003, the jury returned a not-guilty verdict

---

[5]   The petition accuses Bondurant of: making illegal stops under false pretenses; illegally
searching vehicles without consent; illegally seizing "purchased items" from vehicles; taking cash
payments for traffic violations; harassing students; harassing customers leaving the Meeks Sundry
and Liquor Store, and conspiring with another officer to stop vehicles leaving and entering Coyle.
(Dkt. No. 67, Ex. 1 at 2.)

In their Reply, Defendants object to the petition being considered as summary judgment
evidence. (Defs.' Reply at 5 & 6).   They appear to challenge it on authenticity and hearsay grounds.
Defendants are correct that Plaintiffs do not offer a supporting affidavit as required by Rule 56(e).
However, because the evidence offered as the petition and cover letter (Pls.' Ex. 1) is consistent with
other descriptions of it in evidence and the authentication issue could easily be overcome at trial,
the Court will consider it part of the record, notwithstanding Defendants' objections.   Defendants'
hearsay objection, in contrast, is unfounded as the evidence is not being offered for the truth of the
matters asserted.

on the charges of First Degree Rape.   According to the District Attorney's Office victim/witness advocate, at all three proceedings, Minor "always stated that she was forced to have sexual intercourse against her will by [Plaintiffs] and Mr. Leyva" and that her out of court statements, to which the advocate was privy, were "always consistent with this." (Defs.' Ex. E ¶¶ 1, 5-6.)[6]

Plaintiffs filed their Complaint on May 25, 2005.

DISCUSSION

Plaintiffs assert claims against Defendants for: malicious prosecution; false arrest; abuse of process; civil conspiracy to arrest, prosecute, and detain Plaintiffs subject to unreasonable bail; violation of their freedom of association; violation of their substantive due process rights; and unreasonable bail.   Plaintiffs concede that they cannot maintain claims

---

[6]   Plaintiffs object that Ms. Braley, the advocate, was not listed as an expert and that she was not present during all conversations between Minor and either Anonioli or Bondurant.   These objections are overruled.   The Court's characterization of her testimony addresses Plaintiffs' concern about an over-broad construction of the affidavit.   Further, the affiant supports her statements as based on personal knowledge.   She is not offering an expert opinion.

for false arrest, civil conspiracy, violation of freedom of association, and unreasonable bail.[7] The parties' arguments related to the remaining causes of action are addressed below.

A.    *Constitutional Torts*

Plaintiffs assert claims for the constitutional torts of malicious prosecution and abuse of process under 42 U.S.C. § 1983.  Section 1983 imposes liability on those who, acting under color of state law, violate a federally protected right and under certain circumstances the municipal employer of such a person. Although the common law is the "starting point" in an analysis of a constitutional tort, "satisfaction of each of the common law elements as a prerequisite for consideration of the federal constitutional question" is not required.  Pierce v. Gilchrist, 359 F.3d 1279, 1287 (10th Cir. 2004); see also Hartman v. Moore, ___ U.S. ___, ___, 126 S. Ct. 1695, 1702 (2006) ("[T]he common law is best understood here more as a source of inspired examples than of prefabricated components of [constitutional] torts."). "[T]he ultimate and indispensable element of such a claim is the deprivation of a constitutional right."  Grubbs v. Bailes, 445 F.3d 1275, 1278 (10th Cir. 2006), pet. for cert.

---

[7]  In responding to Defendants' statute of limitations arguments, Plaintiffs concede that their false arrest and "remaining claims" with the exception of the malicious prosecution and abuse of process claims are time barred. (Pls.' Resp. at 18-19.) Immediately thereafter, Plaintiffs clarify that they "do not contend that their civil conspiracy claim is barred by the applicable statute of limitations," but because of a prior Order from the Court, they "do not here urge their civil conspiracy claim." (Id. at 19 n.1.) On a subsequent page of the Response, Plaintiffs assert that they "have conceded under statute of limitation grounds . . . claims other than their malicious prosecution claims, substantive due process, civil conspiracy, and abuse of process." (Id. at 25 n.2.) Plaintiffs respond to Defendants' arguments addressed to the merits of the substantive due process claim (id. at 23-24) but not the civil conspiracy claim.  Having failed to address Defendants' argument that there is no evidence of a conspiracy (Defs.' Br. at 17-18), with which the Court agrees, Plaintiffs' single, contradictory statement that they still mean to pursue such a claim is construed by the Court to have been in error.

filed, 75 USLW 3061 (July 25, 2006).  The gist of these Fourth Amendment claims is Plaintiffs' right to be free from unreasonable seizures.  See id.; Taylor v. Meacham, 82 F.3d 1556, 1560-61 (10th Cir. 1996).  Thus, the Court uses Oklahoma law to guide its discussion of these claims, where appropriate.  Cf. Pierce, 359 F.3d at 1288 (explaining that the common law principles rather than the tort law of any particular state provide the starting point for analyzing a constitutional tort claim).

### 1.   Malicious Prosecution

Under Oklahoma law, the tort of malicious prosecution requires proof of:  (1) the bringing of the action by the defendant; (2) its successful termination in favor of the plaintiff; (3) want of probable cause to bring the action; (4) malice; and (5) damages.  Parker v. Midwest City, 1993 OK 29, ¶ 8, 850 P.2d 1065, 1067.  Plaintiffs' malicious prosecution claim is based on the initiation of charges of First Degree Rape, allegedly without probable cause.  (Pls.' Resp. at 20 (arguing that there are a number of disputed facts that "place into doubt whether probable cause existed for the filing of the criminal charges against" Plaintiffs).)  The focus of Plaintiffs' argument is the alleged fact that the probable cause affidavits submitted by Bondurant contained false statements and omitted exculpatory information.  (Id. at 22.)  The alleged false statement was that Maul confessed.  The relevant omissions include the fact that Ellerby claimed to have no knowledge of sexual activity between Minor and either Plaintiff; that additional guests were not interviewed; that Minor did not attempt to leave the party or get help after any alleged rape; that Minor did not report

the alleged rapes until days later; and that there was no physical evidence of sexual activity between Minor and either Plaintiff.[8]

Plaintiffs' malicious prosecution claim fails on its merits.[9]  As an initial matter, Plaintiffs offer no evidence that Maul did not admit to having sex with Minor and that she told him to stop.  Thus, Plaintiffs' allegation that Bondurant's affidavit contained a known falsehood is unsupported and an insufficient basis on which to oppose summary judgment.  In addition, there is evidence that Antonioli had a copy of Bondurant's January 2 report (as well as other information[10]) in addition to the affidavits when he brought charges against Plaintiffs on February 2.  (Defs.' Ex. C, Antonioli Aff., ¶ 3.)  Thus, the only remaining omissions were that Minor did not immediately report the alleged rapes or seek help and that additional persons who attended the party were not interviewed.  Viewed in the light most

---

[8]  Plaintiffs identify at least eight facts which they argue preclude a finding of probable cause.  (Pls.' Resp. at 21-22.)  Although more concisely stated, the Court's summation above accurately conveys Plaintiffs' position.

[9]  For this reason, the Court does not consider Defendants' statute of limitations argument.

[10]  This other information includes results of a polygraph taken of Minor and relayed to Antonioli by Lt. Dennis McGrath of the Stillwater Police Department.  (Anonioli Aff. ¶ 5.)  This polygraph is the subject of a pending motion in limine and summary judgment evidence to which Plaintiffs object.  According to Anonioli, he "underst[ood] from Lt. McGrath that he found that [Minor] was not deceptive regarding her allegations of rape by Maul and Whiteside."  (Id.)  Lt. McGrath's affidavit (Defs.' Ex. D) is in the record and identifies specific questions asked and states his recollection that Minor's answers revealed "no deception indicated."  However, out of an abundance of caution, the Court does not consider the fact that a polygraph occurred or the results communicated by Lt. McGrath in deciding this motion.

On a related issue, the Court does not agree that ¶ 18 of Bondurant's Affidavit conflicts with other testimony.  The negative implication of that paragraph is that Bondurant did not relay information from Lt. McGrath to Antonioli.  That inference is consistent with Antonioli's affidavit testimony that he spoke directly with Lt. McGrath.

favorable to Plaintiffs, the alleged omissions are insufficient as a matter of law to vitiate probable cause. See Grubbs, 445 F.3d at 1278 ("The constitutional inquiry for [a false arrest/malicious prosecution claim] focuses on the materiality of the misconduct in relation to the determination of probable cause.")   Furthermore, Plaintiffs have failed to offer evidence in support of their theory that Bondurant had a retaliatory motive.[11]

"Probable cause is a reasonable belief in the existence of the facts upon which the claim is based and a reasonable belief that under such facts the claim may be valid either at common law or under an existing statute." Greenberg v. Wolfberg, 1994 OK 147, ¶ 17 n.29, 890 P.2d 895, 903 n.29 (emphasis omitted); see also Wallace v. Oklahoma, 1980 OK CR 87, ¶ 5, 620 P.2d 410, 412 (holding that circumstantial evidence but no victim identification was sufficient to establish probable cause; "it is not necessary that the evidence presented at preliminary hearing be sufficient to convict").   Under Oklahoma law, First Degree Rape includes, irrespective of the age of the person committing the crime, a "rape committed upon a person incapable through mental illness or any unsoundness of mind of giving legal consent" or a "rape accomplished with any person by means of force, violence, or threats of

---

[11]   The probable cause affidavits, on which Plaintiffs rest their claim, were submitted on January 4. (Antonioli Aff. ¶ 4 & Exs. 6 & 7.)  Bondurant claims that he was unaware of who had signed the petition concerning him until February 10 and that he did not believe the petition was circulated until after charges were filed (on February 2). (Bondurant Aff. ¶ 21.)  According to Plaintiffs, the petition was circulated "throughout January" and presented to the Langston City Council in February. (Pls.' Resp. at 6.)  However, the cover letter to the petition is dated January 28 and its contents suggest that the petition had not yet been circulated as of that date.  Plaintiffs offer no evidence that suggests that the petition was circulated at the time of Bondurant's investigation or when he submitted his probable cause affidavits or that Bondurant was aware that Meeks initiated the petition or complaints and was related to Plaintiffs.

force or violence accompanied by apparent power of execution." 21 Okla. Stat. § 1114(A)(2)
& (3). Rape is defined as "an act of sexual intercourse involving vaginal or anal penetration
accomplished with a male or female who is not the spouse of the perpetrator and who may
be of the same or the opposite sex as the perpetrator," under specified circumstances. 21
Okla. Stat. § 1111(A). "In a case involving the withholding of exculpatory evidence, the
existence of probable cause is determined by examining the evidence 'as if the omitted
information had been included' and inquiring whether probable cause existed in light of all
the evidence, including the omitted information." Pierce, 359 F.3d at 1293. The absence of
probable cause, as an evidentiary matter, is closely tied to the critical issue of whether a
retaliatory or improper motive was the but-for cause of the Plaintiffs' injury (i.e., an allegedly
unjustified prosecution). See Hartman, ___ U.S. ___, 126 S. Ct. at 1707 (analyzing a
retaliatory-prosecution claim in a Bivens suit). Thus, Plaintiffs must prove that probable
cause was lacking to survive summary judgment. See id.

Here, there was evidence that Minor was under the influence of and impaired by
alcohol at the time of the alleged rapes, that both Plaintiffs were told no or to stop, that
Plaintiffs led Minor to a bedroom, that Maul laid on top of Minor when she attempted to get
up, that Whiteside pushed her when she tried to dress, that the sex was nonconsensual, and
that the alleged rapes occurred in the late evening or early morning hours. Plaintiffs' basic
complaint seems to be that a victim's allegations are insufficient to support a finding of
probable cause, or at least Minor's allegations, when considered in the context of other
circumstances, are insufficient. Plaintiffs offer no authority to support this position. See Ray

v. Oklahoma, 1988 OK CR 199, ¶ 8, 762 P.2d 274, 277 ("A conviction for rape may be sustained upon the uncorroborated testimony of the prosecuting witness, unless such testimony appears incredible and so unsubstantial as to make it unworthy of belief."). To the contrary, the Court finds that even if the "omissions" were considered, Antonioli had probable cause to bring First Degree Rape charges against Plaintiffs.[12]

Moreover, even if probable cause were lacking when the Informations were filed and Plaintiffs arrested, "the preliminary hearing broke the 'chain of causation'" Taylor, 82 F.3d at 1564. In the preliminary hearing, which spanned two days and occurred *after* charges were brought against Plaintiffs, Minor was examined and cross-examined concerning her allegations of rape. The "omissions" from Bondurant's affidavits appear to have been raised and addressed at that time. Judge Wheeler independently heard testimony in an adversary proceeding, evaluated the credibility of the complaining witness, and concluded that there was sufficient evidence to hold Plaintiffs over for trial. To the extent Plaintiffs would argue that Bondurant coerced Minor into giving false testimony at the preliminary hearing, there is absolutely no evidence to support such a contention. Thus, any malicious prosecution initiated by Bondurant or the Langston Police Department through the withholding of

---

[12] Plaintiffs' malicious prosecution claim against Bondurant rests on the theory that Bondurant was "instrumental" in charges being filed against Plaintiffs by knowingly presenting false evidence and withholding exculpatory information. See Pierce, 359 F.3d at 1292-92. Webb's liability is as a supervisor who was deliberately indifferent to the risk of a constitutional violation by failing to train and/or supervise his subordinates. See Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988). Langston's liability would require proof of an unconstitutuional policy or custom or a failure to train that amounts to a deliberate indifference to the rights of those with whom the police come into contact. See Olsen v. Layton Hills Mall, 312 F.3d 1304, 1318 (10th Cir. 2002).

exculpatory evidence and/or intentional falsehoods was vitiated by the preliminary hearing and judicial determination to bind Plaintiffs over for trial. Id. Therefore, summary judgment on Plaintiffs' Fourth Amendment malicious prosecution claim is warranted.

### 2. *Abuse of Process*

Plaintiffs claim that their abuse of process claim is "part and parcel of their claim for malicious prosecution." (Pls.' Resp. at 23.) In the overlap of these two claims, Plaintiffs allege that: Bondurant conducted an inadequate investigation; Bondurant lied about obtaining confessions; Bondurant withheld exculpatory evidence; Webb improperly supervised Bondurant's investigation; and Webb failed to properly train Bondurant.

At common law,

> The quintessence of *abuse of process* is "not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends." The tort's elements are (1) the improper use of the court's process (2) *primarily* for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse. Although a plaintiff in a predicate [action] may have been motivated by bad intention, there is no abuse if the court's process is used legitimately to its *authorized* conclusion.

Greenberg, 1994 OK 147, ¶ 22, 890 P.2d 895, 905 (footnotes omitted). "Process" "encompasses the entire range of procedures incident to the litigation process." 1994 OK 147, ¶ 22 n.47, 890 P.2d 895, 905 n.47. However, as stated above, the related constitutional tort is focused on Plaintiffs' Fourth Amendment interests.

The Court agrees that this claim is closely intertwined with if not redundant of the malicious prosecution claim. However, a discrete abuse of process fails as well, on its merits and on statute of limitations grounds. All of the alleged abuses occurred before either

Plaintiff was charged and, thus, before proceedings were initiated.  See Wolford v. Lasater, 78 F.3d 484, 490 (10th Cir. 1996) (citing authority in context of a state law abuse of process claim that such a claim is concerned with abuses that occur after process has issued). Moreover, Plaintiffs have offered no evidence of malice or improper purpose with respect to Bondurant or Webb.  Thus, the abuse of process claim is fatally flawed.

In addition, if this constitutional claim accrues at the same time as its common law analog, then it would be barred because all of the conduct complained of occurred more than two years before this action was filed.  A two-year statute of limitations applies to Plaintiffs' § 1983 claims, meaning that they had two years from the date each of their causes of action accrued to file an action.  See 12 Okla. Stat. § 95(3); Meade v. Grubbs, 841 F.2d 1512, 1522 (10th Cir. 1988).  In Oklahoma, a claim for abuse of process accrues "when the process is abused and damages are incurred, *regardless of when the action is determined*."  Greenberg, 1994 OK 147, ¶ 23, 890 P.2d at 905; but see Helton v. Clements, 832 F.2d 332, 334-35 (5th Cir. 1987) (explaining that for § 1983 state law controls which limitations period applies but federal law determines when a cause of action accrues, i.e., "the moment the plaintiff knows or has reason to know of the injury that is the basis of his complaint").  Because all of the alleged abuses occurred no later than April 4, 2000, any constitutional claim based thereon and raised for the first time in a 2005 complaint are time barred.  Therefore, summary judgment on Plaintiffs' Fourth Amendment abuse of process claim is warranted.

B.     *Substantive Due Process*

The basis of Plaintiffs' substantive due process claim is that Bondurant intentionally conducted a one-sided investigation and withheld exculpatory evidence and that Webb willfully ignored Bondurant's conduct, which led to Plaintiffs being charged with crimes for which they were later exonerated and Whiteside spending 69 days in jail. (Pls.' Resp. at 23-24.)

> The Fourteenth Amendment provides that no person shall be deprived of "life, liberty, or property, without due process of law." "[T]he touchstone of due process is protection of the individual against arbitrary action of government . . . whether the fault lies in a denial of fundamental procedural fairness . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective." "Substantive due process claims are not based on state law but are founded upon deeply rooted notions of fundamental personal interests derived from the Constitution." "The 'ultimate' standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges."

Graves v. Thomas, 450 F.3d 1215, 1220 (10th Cir. 2006) (citations omitted).

On this record, there is no evidence that either Bondurant or Webb intentionally violated or was deliberately indifferent to Plaintiffs' Fourteenth Amendment rights.[13] Further, the alleged behavior, as described above, does not, as a matter of law, shock the conscience. Therefore, summary judgment on Plaintiffs' substantive due process claim is warranted.

---

[13] In their Response, Plaintiffs refer to deposition testimony where Webb admits that he knew Bondurant "had never conducted an investigation of this type" but did not involve himself in the investigation and "had received numerous complaints about Bondurant's performance as an officer." (Pls.' Resp. at 26-27). However, the evidence cited in support is not part of the record.

C.       *Qualified Immunity & Municipal Liability*

Having found that Plaintiffs failed to identify evidence that would raise a genuine issue of material fact as to whether or not any constitutional right had been violated, the individual Defendants are also entitled to qualified immunity.

> Government officials are entitled to qualified immunity from liability for civil damages under § 1983 when their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."

Smith v. Cochran, 339 F.3d 1205, 1211 (10th Cir. 2003) (citations omitted). When a government official raises a qualified immunity defense, the Court "must consider two questions: '(1) whether the alleged conduct violated a constitutional right, and if so, (2) whether the law was clearly established at the time of the defendant's actions.'" Arredondo v. Locklear, ___ F.3d ___, 2006 WL 2604612, at *5 (10th Cir. Sept. 12, 2006) (citation omitted). Plaintiffs' failure to carry their burden with respect to the first inquiry thus entitles the individual Defendants to summary judgment on the basis of qualified immunity with respect to claims against them in their individual capacities as well as on the merits of Plaintiffs' claims. See Smith, 339 F.3d at 1211.

Likewise, the absence of an underlying constitutional violation precludes judgment against Langston. A municipality's liability under § 1983 hinges on an underlying constitutional violation. Graves, 450 F.3d at 1218 & 1225. Therefore, Langston is entitled to summary judgment on this basis as well.

19

CONCLUSION

Accordingly, Defendant Bondurant, Webb and the City's Motion for Summary Judgment (Dkt. No. 53) is GRANTED.  Judgment shall issue in Defendants' favor on all of Plaintiffs' claims. All pending motions are stricken, as moot.

IT IS SO ORDERED this 4th day of October, 2006.


ROBIN J. CAUTHRON
United States District Judge